## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JARRELL DEANDRE CURNE,

        Plaintiff,

        v.

U.S. SMALL BUSINESS
ADMINISTRATION, *et al.*,

        Defendants.

Civil Action No. 23-3789 (BAH)

Judge Beryl A. Howell

### <u>MEMORANDUM OPINION</u>

*Pro se* plaintiff Jarrell Deandre Curne initiated this action on December 20, 2023, and, after amending his complaint once, seeks relief from a number of both named and unnamed federal officials and entities, and nongovernmental entities, including the United States, United States Small Business Administration ("SBA"), United States Attorney General Merrick Garland, the United States Department of Justice ("DOJ"), two unknown individuals employed by the federal government ("John Does"), Internal Revenue Service ("IRS") Agent Jeffrey D. Thomas; and Assistant United States Attorney ("AUSA") Paul Becker (collectively, the "federal defendants"); US Bank, National Association ("U.S. Bank"); and Stinson LLP ("Stinson"), for alleged violations of his rights connected with his receipt of a Paycheck Protection Program ("PPP") loan, his application for forgiveness of that loan, and an ongoing criminal prosecution of plaintiff in the Western District of Missouri. *See* Am. Compl., ECF No. 40 (docketing plaintiff's amended complaint); Pl.'s Resp. to Order of the Court ("Text of Pl.'s Am. Compl."), ECF No. 26 (containing the updated redlined version of plaintiff's amended complaint).[1]  All defendants have now moved,

---

[1]      The docket entry officially docketing plaintiff's amended complaint, ECF No. 40, states that the text of plaintiff's Amended Complaint can be found in plaintiff's motion for leave to file an amended complaint, ECF No. 18, filed on June 2, 2024. *See* Am. Compl., ECF No. 40. Plaintiff, however, filed an updated redlined version of his

in three separate motions, to dismiss the Amended Complaint.  *See* Fed. Defs.' Mot. Dismiss & Mot. Transfer Case ("Fed. Defs.' MTD"), ECF No. 31; U.S. Bank's Mot. Dismiss Am. Compl. ("U.S. Bank's MTD"), ECF No. 45; Stinson LLP's Mot. Dismiss Am. Compl. ("Stinson LLP's MTD"), ECF No. 46.  For the reasons explained below, U.S. Bank and Stinson LLP's motions are granted, and the federal defendants' motion is granted in part and denied in part.  Plaintiff's claims will be dismissed, except for his *Bivens* action against the two John Doe federal employees and his claim against the United States for unlawful disclosure of confidential tax information, which claims will be transferred to the Western District of Missouri.

## I.    BACKGROUND

The factual background and procedural history of this case are summarized below.

### A.    Factual Background

Plaintiff, a citizen of Missouri, is a music manager, executive, and recording artist who owns and operates Hustle Ova Everything Entertainment, LLC ("HOEE").  Am. Compl. at 4.  In May 2020, HOEE received a PPP loan for $312,500 through U.S. Bank, based on an application signed and submitted by plaintiff.  *See* U.S. Bank SBA Payroll Protection Loan at 3–7, ECF No. 18-1; *see also* Am. Compl. ¶ 24.C., 22.  The PPP loan was assigned SBA loan number 5511277304.  Am. Compl. ¶ 22.  Plaintiff thereafter applied for the loan to be forgiven, which application was denied by SBA, on August 1, 2023, because "insufficient" documentation had been provided to determine whether the loan was eligible for forgiveness.  Compl. ("First Compl."), Ex. 3, ECF No. 1-2 at 13; Am. Compl. ¶ 8.

---

amended complaint on June 16, 2024, *see* Text of Pl.'s Am. Compl., in response to an order from the Court, *see* Min. Order (June 12, 2024), which filing prompted the Court to grant plaintiff's motion for leave to file an amended complaint, *see* Min. Order (July 10, 2024).  Therefore, this redline is treated as the operative version of plaintiff's complaint.

Plaintiff appealed the denial of forgiveness to the SBA's Office of Hearings and Appeal ("OHA"), Am. Compl. ¶¶ 13, 15; Fed. Defs.' MTD at 2 (citing Decl. of Shamia A. Stewart Submitted Supp. Fed. Defs.' Mot. Dismiss ("Stewart Decl.") ¶ 5, Ex. B, ECF No. 31-2), and submitted with his appeal various business documents, Fed. Defs.' MTD at 2 (citing Stewart Decl.). The SBA then withdrew its final loan review decision to conduct further review of the loan and its eligibility. Am. Compl. ¶ 13. Shortly thereafter, on August 29, 2023, the OHA dismissed plaintiff's appeal for lack of jurisdiction because the final decision had been withdrawn and the loan forgiveness decision was thus still undergoing review. First Compl., Ex. 1, ECF No. 1-2 at 8. As plaintiff and the federal defendants both acknowledge, at the time plaintiff filed his Amended Complaint, a final decision on plaintiff's application for PPP loan forgiveness had yet to be made, and the loan forgiveness application was still pending. *See* Am. Compl. ¶ 8; Fed. Defs.' MTD at 3.

Meanwhile, on June 29, 2023, plaintiff filed a case in the U.S. Court of Federal Claims ("CFC") against the United States, alleging violations of his constitutional rights by IRS Agent Jeffery Thomas, two unknown IRS agents, SBA employee Stacy Spencer, and the IRS and SBA. *See* Compl., *Curne v. United States*, 1:23-cv-1031-PSH (Fed. Cl.), ECF No. 1. The government's motion to dismiss this action, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), s*ee* Mot. Dismiss, *Curne v. United States*, 1:23-cv-1031-PSH (Fed. Cl.), ECF No. 22, was granted, on February 15, 2024, in an oral opinion, with judgment entered in favor of the government on February 21, 2024, *see Curne v. United States*, 1:23-cv-1031-PSH (Fed. Cl.), ECF Nos. 42, 43. Plaintiff's motion for relief from judgment, *id.*, ECF No. 44, was denied on July 18, 2024, *id.*, ECF No. 49, prompting plaintiff to file an appeal to the Federal Circuit, which appeal remains pending, *see Curne v. United States*, No. 24-2360 (Fed. Cir.) (opened Sept. 26, 2024).

While plaintiff's CFC complaint was pending, plaintiff was indicted, on September 6, 2023, in the Western District of Missouri on two counts of wire fraud, in violation of 18 U.S.C. § 1343, and 28 counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), for alleged illegal actions in connection with the PPP loan to plaintiff's business.  Indictment, *United States v. Curne*, 4:23-cr-205-BCW-1 (W.D. Mo.), ECF No. 1 (filed Sept. 6, 2023); *see also* Am. Compl. ¶ 17.  A jury trial is currently scheduled in this case for April 2025.  *See* Order, *United States v. Curne*, 4:23-cr-205-BCW-1 (W.D. Mo.), ECF No. 44 (filed Sept. 24, 2024).

### B.    Procedural Background

Plaintiff initiated the instant action on December 20, 2023, naming the United States, the SBA, Attorney General Garland, the DOJ, two John Doe federal employees, Stinson LLP, U.S. Bank, the CBE Group, Inc., and Pioneer Credit Recovery, Inc., as defendants.  *See* First Compl. Plaintiff's initial complaint requested injunctive relief to "stop" the ongoing criminal case against him, *id.* ¶ 5; an order forgiving plaintiff's first PPP loan of $312,500 and approving a "second draw" loan for an additional $312,500; and, lastly, an "order" directing defendants to "cease and desist violating [his] constitutional rights," *id.* at 12.

Six months later, plaintiff sought leave to add two additional defendants: the Internal Revenue Service and Zachary D. Miller, an attorney at Burr & Forman in Nashville, Tennessee, *see* Pl.'s Mot. to Join Parties, ECF No. 17, and to file an amended complaint, *see* Pl.'s Mot. for Leave to File Am. Compl, ECF No. 18.  His motion to file an amended complaint was granted, without objection from defendants.  Min. Order (July 17, 2024); *see also* U.S. Bank's Resp. to Pl.'s Mot. for Leave to File Am. Compl., ECF No. 27; Stinson LLP's Resp. to Pl.'s Mot. for Leave to File Am. Compl., ECF No. 28; Fed. Defs.' Resp. to Pl.'s Mot. for Leave to File Am. Compl.

ECF No. 29.[2]  Plaintiff's Amended Complaint added two new named defendants to the case: IRS

Agent Jeffrey D. Thomas, named specifically in his official capacity, and AUSA Paul Becker.  *See*

Am. Compl. at 46 (listing the defendants in the case).  The Amended Complaint seeks to "enjoin"

the "pending criminal prosecution" against him in the Western District of Michigan, Am. Compl.

at 6, and, construed liberally, appears to raise the following claims:

- breach of contract and negligence against U.S. Bank, *id.* at 6, 13, 28;
- unlawful discrimination by US Bank, in violation of 15 U.S.C. § 1691, *id.* at 6, 29;
- defamation by US Bank and IRS Agent Jeffrey D. Thomas, *id.* at 30–31;
- a "Bivens Action" against Agent Thomas, *id.* at 34, and the two John Doe federal employees, *id.* at 5–6, 34;
- unlawful disclosure of plaintiff's tax information by Agent Thomas, in violation of 26 U.S.C. § 6103, *id.* at 35;
- Federal Torts Claims Act ("FTCA") and Taxpayer Bill of Rights violations by Agent Thomas, *id.* at 37–40;
- unlawful carrying of a firearm, in violation of the Law Enforcement Officers Safety Act of 2004 ("LEOSA") by Agent Thomas, *id.* at 40–41;
- negligent misrepresentation by Stinson LLP, *id.* at 43–45;[3] and
- a claim, under 42 U.S.C. § 1983, *id.* at 1, 5, 42, although the basis and targeted defendants for this claim is unclear.

The federal defendants seek dismissal of the Amended Complaint on multiple grounds,

Fed. Defs.' MTD, and both defendants U.S. Bank and Stinson LLP seek dismissal for failure to

state a claim on which relief could be granted, pursuant to Federal Rule of Civil Procedure

12(b)(6), and Stinson also contends the Amended Complaint fails to plead the allegation of

---

[2]    While the Amended Complaint asserts claims of negligent misrepresentation against Pioneer Credit
Recovery and the CBE Group, both of those defendants were dismissed, with prejudice, from this lawsuit, pursuant
to joint stipulations of dismissal with plaintiff.  *See* Pioneer Credit Recovery's Joint Stip. of Dismissal with
Prejudice, ECF No. 37; Min. Order (July 10, 2024) (dismissing Pioneer); Stip. of Dismissal with Prejudice as to Def.
CBE Group, Inc., ECF No. 39; Min. Order (July 11, 2024) (dismissing CBE Group).

[3]    The Amended Complaint claims tortious interference through negligent misrepresentation and defamation
by Zachary D. Miller, Am. Compl. at 41, but this individual is not named as a defendant in the Amended Complaint,
*see generally id.*, and plaintiff has provided no proof of service on or otherwise joined Miller as a defendant in the
case, meaning any claims raised against him must be dismissed.

negligent misrepresentation with sufficient particularity, Rule 9(b), *see* Stinson LLP's MTD.[4] These three motions are ripe for consideration. *See* Pl.'s Resp. to Mot. to Dismiss or Transfer ("Pl.'s Opp'n"), ECF No. 52; Stinson LLP's Reply Mem. Supp. Mot. Dismiss, ECF No. 53; U.S. Bank's Reply Mem. Supp. Mot. Dismiss, ECF No. 54.

## II.    DISCUSSION

Each of plaintiff's claims are discussed below.

### A.    Claims Against Federal Defendants

As a threshold matter, throughout the Amended Complaint, plaintiff attacks the criminal indictment against him in the Western District of Missouri as inaccurate and wrongful, *see, e.g.*, Am. Compl. at 5–6, 7, 9, 12, 14, 20–21, 23, 34, and as the basis for asking this Court to "enjoin" this ongoing criminal case, *id.* at 6; *see also* Pl.'s Opp'n ¶ 35 ("Due to the loan no longer being denied, I am asking this court to order the federal government to dismiss the indictment until a decision has been made."). Clear binding precedent, however, forecloses plaintiff's requested relief and requires dismissal of this request.

"It is well-settled . . . that a court will not act to restrain a criminal prosecution if the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Miranda v. Gonzales*, 173 F. App'x 840, 841 (D.C. Cir. 2006) (citing *Deaver v. Seymour*, 822 F.2d 66, 69 (D.C. Cir. 1987) (citing *Younger v. Harris*, 401 U.S. 37 (1971))). As the D.C. Circuit has found, "Congress has established a comprehensive set of rules governing federal criminal prosecutions—the Federal Rules of Criminal Procedure." *Deaver*, 822 F.2d at 71. Here, those rules provide plaintiff with an adequate means to challenge the indictment against him and

---

[4]        Plaintiff was advised about defendants' pending motions to dismiss and the potential consequences of failing to respond to the motions, *see* Order, Aug. 22, 2024, ECF No. 51, as required by *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988).

raise to the court hearing the criminal case any alleged defects with the prosecution. *See, e.g.*, *Miranda*, 173 F. App'x at 841 (holding that Fed. R. Crim. P. 12 provided an opportunity to raise defects with the prosecution); *Deaver*, 822 F.2d at 70 (same). Allowing a defendant to challenge a potential or ongoing prosecution in an "independent civil suit" would undermine the "final judgment rule," which "generally prevents defendants from bringing appeals until after conviction." *Deaver*, 822 F.2d at 71. Any disagreement plaintiff has with the government's decision to prosecute him must be addressed through the established methods of the Federal Rules of Criminal Procedure and potentially on appeal after final judgment is entered, not by "bringing ancillary equitable proceedings." *Id.* Plaintiff may not use this case to "circumvent federal criminal procedure," *id.*, and therefore his request for this Court to enjoin the ongoing federal prosecution against him in the Western District of Missouri is entirely improper.

Plaintiff raises several other claims for relief against the federal defendants, which are addressed next. With two exceptions, plaintiff's claims against the federal defendants will be dismissed. His *Bivens* action against the two John Doe federal employees and his claim of unlawful disclosure of confidential tax information, with the United States substituted as the sole defendant, will be transferred to the Western District of Missouri.

### 1. Section 1983 Does Not Authorize Suits Against the Federal Government.

The Amended Complaint purports to raise a claim against the federal defendants under 42 U.S.C. § 1983, although the complaint is not clear as to what exactly this claim entails. *See* Am. Compl. at 1, 5, 42. Regardless, any Section 1983 claim against the federal defendants must be dismissed for lack of subject matter jurisdiction.

Federal district courts "are courts of limited subject-matter jurisdiction" and may "decide only those cases over which Congress grants [them] jurisdiction." *Bronner ex rel. Am. Stud. Ass'n*

*v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020) (quoting *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012)).  Absent subject-matter jurisdiction over a case, the court must dismiss it. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)); Fed. R. Civ. P. 12(h)(3).  When a court's subject-matter jurisdiction is challenged, the plaintiff bears the burden of demonstrating that the court has subject-matter jurisdiction over the claim at issue.  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Under the doctrine of sovereign immunity, "the United States may not be sued without its consent," which means that "the existence of consent is a prerequisite for jurisdiction" in suits against the United States.  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  A waiver of sovereign immunity by the federal government "must be unequivocally expressed in statutory text and will not be implied."  *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations and internal citations omitted).  Similarly, waivers of sovereign immunity are "strictly construed" in favor of the United States.  *Orff v. United States*, 545 U.S. 596, 601–02 (2005).  "To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims."  *Lane*, 518 U.S. at 192 (citing *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992)).  The question whether sovereign immunity has been waived implicates courts' subject-matter jurisdiction, meaning that the plaintiff bears the burden of establishing that sovereign immunity has been abrogated by the federal government to prove that jurisdiction exists for a claim against the United States.  *See Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006) (citing *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003)).

Section 1983 authorizes suits against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any *State or Territory* or the District of Columbia" who deprives any person of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis supplied).  By its plain terms, this statute only authorizes suits against individuals acting under state law, not federal.  *Id.*; *see also Bolden-Bey v. U.S. Parole Comm'n*, 731 F. Supp. 2d 11, 14 (D.D.C. 2010) (collecting cases holding that Section 1983 does not authorize suit against federal actors); *Townsend v. United States*, 236 F. Supp. 3d 280, 325 (D.D.C. 2017).  Since Section 1983 contains no text explicitly authorizing suits against the United States, this statute does not waive the federal government's sovereign immunity, meaning that none of the federal defendants are subject to civil suit in their official capacities, pursuant to Section 1983.  *See, e.g., Bolden-Bey*, 731 F. Supp. 2d at 14; *Bourbon v. Mabus*, 813 F. Supp. 2d 200, 209–10 (D.D.C. 2011).  Therefore, this claim must be dismissed for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).

### 2.    Plaintiff Failed to Administratively Exhaust His FTCA Claims.

The Amended Complaint appears to raise tort claims against the federal defendants, including alleging that IRS Agent Thomas defamed plaintiff, Am. Compl. at 31–34, and committed such torts as "false imprisonment, false arrest, abuse of process, and malicious prosecution," *id.* at 38, for which plaintiff attempts to bring a claim under the FTCA, *id.* at 37–39.  The allegations also mention AUSA Becker a number of times, *see, e.g., id.* at 4, 8, 23, 33, but do not purport to raise a legal claim against him, *see generally id.*  These claims, which are all governed by the FTCA, must also be dismissed for lack of subject matter jurisdiction.

As an initial matter, the United States is the only proper defendant for plaintiff's tort claims against the federal defendants.  The Supreme Court has explained that "[t]he Federal Employees

Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)).  When a lawsuit names a federal employee as a defendant for "wrongful or negligent conduct," *id.*, the Attorney General may certify that the employee was acting "within the scope of his office or employment at the time of the incident out of which the claim arose," *id.* at 229–30 (quoting 28 U.S.C. § 2679(d)(1), (2)).  The plaintiff may challenge the certification and attempt to rebut that the employee was acting within the scope of employment. *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009) ("A plaintiff may contest the Attorney General's scope-of-employment certification before a district court," which requires alleging "sufficient facts that, taken as true, would establish that the defendant['s] actions exceeded the scope of [his] employment" (alterations in original) (quoting *Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003))).  If the certification is not challenged, however, "the case is . . . restyled as an action against the United States that is governed by the" FTCA, *Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006), and the employee is dismissed from the action, with the United States substituted as the defendant, *Osborn*, 549 U.S. at 230.

The Amended Complaint contains no allegations that AUSA Becker committed any of the claimed tortious behavior, but only IRS Agent Thomas.  *See, e.g.*, Am. Compl. at 31–33, 35.  The government has provided a Westfall Certification certifying that Agent Thomas was "acting within the scope of his employment as an employee of the United States of America at the time of the alleged incidents," Gov't's Westfall Certification, ECF No. 31-2, and plaintiff has made no attempt to rebut this certification.  To the contrary, plaintiff has only named Agent Thomas as a defendant in his "Official Capacity," Am. Compl.. at 46, recognizing him as an official actor.  Therefore,

pursuant to the government's uncontested Westfall Certification, the United States must be substituted as the sole defendant for plaintiff's tort claims against the federal defendants.

Federal courts do not have subject matter jurisdiction to hear claims under the FTCA until plaintiffs have first "exhausted their administrative remedies" by raising those claims to the appropriate federal agency or agencies. *McNeil v. United States*, 508 U.S. 106, 113 (1993).  To do so, a plaintiff must file an "administrative claim" with the agency of the employee who caused the alleged harm. *Simpkins v. District of Columbia*, 108 F.3d 366, 370–71 (D.C. Cir. 1997); *see also* 28 U.S.C. § 2675(a).  The administrative claim must contain "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C. Cir. 1987).  In cases where a plaintiff fails to file such a complaint and thus has not administratively exhausted the claim before filing suit, district courts "lack[] subject matter jurisdiction" to hear the claim. *Simpkins*, 108 F.3d at 371.  Similar to sovereign immunity, since exhaustion under the FTCA is a question of the court's subject-matter jurisdiction, *see, e.g.*, *GAF Corp.* 818 F.2d at 917–20; *Abdurrahman v. Engstrom*, 168 F. App'x 445, 445 (D.C. Cir. 2005) (affirming dismissal of FTCA claims for lack of subject-matter jurisdiction where the exhaustion requirement was not met), a plaintiff seeking relief under the FTCA bears the burden of showing proper exhaustion of any tort claim, *Stoddard v. U.S. Parole Comm'n*, 900 F. Supp. 2d 38, 41 (D.D.C. 2012) (citing *GAF Corp.*, 818 F.2d at 919), by a preponderance of the evidence, *Norton v. United States*, 530 F. Supp. 3d 1, 5 (D.D.C. 2021).

Plaintiff here has not met this burden to show exhaustion of his tort claims by filing the required administrative claim with either the DOJ, AUSA Becker's employer, or the IRS, which employs IRS Agent Thomas.  Despite generally acknowledging this exhaustion requirement, Am.

Compl. at 37 (stating "[t]his was sent to Anne Delmare, the Court of Claims and IRS"), this ambiguous statement falls far short of alleging that a proper administrative claim was filed with the correct federal agencies, much less establishing this prerequisite for an FTCA suit by a preponderance of the evidence.[5]   Such a showing is a "jurisdictional prerequisite" to proceeding with tort claims against the federal government, *Stoddard*, 900 F. Supp. 2d at 41 (citing *McNeil*, 508 U.S. at 113), and absent such showing, plaintiff has failed to establish this Court's subject matter jurisdiction to adjudicate his tort claims against the federal defendants.  His tort claims must therefore be dismissed.

### 3.    Plaintiff Cannot State a Claim Under LEOSA.

Plaintiff additionally alleges that IRS Agent Thomas violated 18 U.S.C. § 926C, the Law Enforcement Officers Safety Act of 2004 ("LEOSA"), by carrying a concealed firearm on plaintiff's property despite plaintiff banning third parties from entering his property with concealed firearms.  Am. Compl. at 40–41.  As the government correctly points out, however, the LEOSA "does not apply to" plaintiff.  Fed. Defs.' MTD at 17.  Instead, the law creates a "federal right" for "active and retired 'qualified law enforcement officer[s]' who meet certain requirements" to "carry a concealed weapon" "notwithstanding contrary state or local law."  *DuBerry v. District of Columbia*, 824 F.3d 1046, 1048 (D.C. Cir. 2016) (alteration in original) (quoting 18 U.S.C. § 926C(a)).  Nothing in the text of LEOSA creates a private right of action for private plaintiffs to sue law enforcement officers who are carrying concealed firearms, even when exceeding the scope of the right created by LEOSA.  To be sure, LEOSA explicitly states that the law does not

---

[5]    The statement in the Amended Complaint that "[t]his" was sent to Anne Delmare, Am. Compl. at 37, who is the attorney representing the United States in plaintiff's CFC suit, *see Curne v. United States*, 1:23-cv-1031-PSH (Fed. Cl.), suggests that plaintiff first made the government aware of his tort claims when they were raised in his CFC lawsuit, rather than as part of an administrative claim.  The government indicates that plaintiff "did not attempt to exhaust an administrative claim with" the relevant federal agencies.  Fed. Defs.' MTD at 9.

supersede state and local laws allowing private persons to limit the carrying of concealed weapons on their private property. 18 U.S.C. § 926C(b)(1); *see also* Am. Compl. at 40–41 ("LEOSA does not supersede state laws permitting private property owners from limiting or prohibiting the carrying of concealed weapons on their property."). This provision, however, merely helps define the scope of the concealed carry right created by the statute and protects local and state laws from preemption. To the extent such state and local limits on carrying concealed firearms on private property exist in Missouri, plaintiff may seek to enforce them through the proper state and local channels. This Court, however, is not empowered to adjudicate such claims under LEOSA or any other authorities that plaintiff has identified, and thus this claim must be dismissed for failure to state a claim upon which relief can be granted.

### 4. The Western District of Missouri is the Proper Venue for Plaintiff's *Bivens* Action.

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized a cause of action to sue, for damages, a "federal agent acting under color of his authority" for violating the Fourth Amendment, *id.* at 389. Plaintiff here brings such a claim—a so-called *Bivens* action—for alleged Fourth Amendment violations by IRS Agent Thomas and the two John Doe federal agents, Am. Compl. at 34. Plaintiff's *Bivens* claim against Agent Thomas will be dismissed because Agent Thomas has not been properly named or served as an individual defendant in this case, while his claim against the two John Doe federal agents will be transferred to the Western District of Missouri.

"[A] *Bivens* action may be maintained against a defendant only in his or her individual capacity, and not in his or her official capacity." *Majhor v. Kempthorne*, 518 F. Supp. 2d 221, 244–45 (D.D.C. 2007) (quoting *Pollack v. Meese*, 737 F. Supp. 663, 666 (D.D.C. 1990)). In this case, plaintiff has only named IRS Agent Thomas as a defendant in his official capacity. *See* Am.

Compl. at 46 (listing Agent Thomas as a defendant in his "Official Capacity").  Furthermore, beyond serving the United States Attorney's Office representing the federal defendants in this case, plaintiff has not provided notice specifically to Agent Thomas of the claim against him, served Agent Thomas with process individually, nor otherwise taken steps to join him as an individual defendant in this case.  *See id.*; Fed. Defs.' MTD at 1 n.1 (noting that plaintiff "has not served Thomas with the summons or Complaint" and that Agent Thomas is only represented by the government in his official capacity); Pl.'s Mot. to Join Parties (asking to add the IRS as a defendant in the case because the agency employs Agent Thomas, but not asking to join Agent Thomas individually).  As a result, plaintiff's *Bivens* action against Agent Thomas must be dismissed for failing to properly join him as an individual defendant.

As for the *Bivens* action against the two John Doe federal agents, the government is correct that venue is improper in the District of Columbia.  *See* Fed. Defs.' MTD at 1, 14–16.  The general federal venue statute establishes three categories under which venue is proper in a civil action in federal court.  *See* 28 U.S.C. § 1391(b).  First, such a suit may be filed in any "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." *Id.* § 1391(b)(1).  Second, venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." *Id.* § 1391(b)(2).  Finally, if neither previous category establishes at least one proper venue for the suit, it may be filed in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *Id.* § 1391(b)(3).

Here, plaintiff has not alleged that the John Doe federal agents reside in the District of Columbia.  To the contrary, the amended complaint alleges that "JOHN DOE'S ADDRESS" is

located in "Lee's Summit, MO 64064." Am. Compl. at 6 (capitalization in original). Furthermore, plaintiff has not alleged that any of the "events or omission" related to his *Bivens* action occurred in D.C., *see generally id.*, but instead took place at plaintiff's address in "Grandview, Missouri 64030," *id.* at 34. Both cities are located in the Western District of Missouri, *see* Fed. Defs.' MTD at 16, meaning that venue would be proper in that district.[6]

When a case is filed in the wrong venue, the court "shall dismiss, or if it be in the interest of justice, transfer" the case to "any district . . . in which [the case] could have been brought." 28 U.S.C. § 1406(a). In the instant case, both parties agree that plaintiff's *Bivens* action should be transferred to the Western District of Missouri, the proper venue for this claim. Fed. Defs.' MTD at 1, 16; Pl.'s Opp'n at 2–3. Therefore, this claim will be transferred.[7]

### 5.    Plaintiff's Claim for Disclosure of Confidential Tax Information Will Also Be Transferred to the Western District of Missouri.

Finally, plaintiff claims that an "IRS employee" told plaintiff's mother that plaintiff had received a $312,500 PPP loan, which information plaintiff alleges was protected tax information and thus that the disclosure violated the confidentiality provisions of 26 U.S.C. § 6103. Am. Compl. at 35. As the government correctly argues, Section 6103 does not contain a private right of action to sue an IRS employee for disclosing confidential tax information. Fed. Defs.' MTD at 16; *see also generally* 26 U.S.C. § 6103. Two other provisions of the tax code, however, provide private rights of action to sue the United States for disclosures in violation of Section 6103.

---

[6]    Given that the first two provisions establish proper venue in at least one district, the third category for venue is not relevant here.

[7]    The government understandably anticipates a broad reading of the amended complaint as including AUSA Becker in the *Bivens* action and responds accordingly. *See* Fed. Defs.' MTD at 14. The amended complaint, however, is not susceptible to such an expansive reading, as it specifically names "federal officers Jeffrey D. Thomas and 2 other unknown individuals" as the federal officials who allegedly violated his constitutional rights at his house in Grandview, Missouri. Am. Compl. at 34; *see also id.* at 36. AUSA Becker is not mentioned in any of the *Bivens* allegations, and therefore cannot be understood to be a defendant as to that claim.

Specifically, Section 7431(a), provides a private right of action to sue the United States if "any officer or employee of the United States knowingly, or by reason of negligence, . . . discloses any return or return information . . . in violation of any provision of section 6103," 26 U.S.C. § 7431(a), and Section 7433 provides a private right of action against the United States if such information is disclosed "recklessly or intentionally, or by reason of negligence," and is "in connection with any collection of Federal tax with respect to a taxpayer," 26 U.S.C. § 7433(a). While Section 7433 contains an exhaustion requirement, *see* 26 U.S.C. § 7433(d), Section 7431 does not, *see generally* 26 U.S.C. § 7431. The United States is substituted as the sole proper defendant when a government employee is sued for violating either provision in his or her official capacity. *See, e.g.*, *Pollinger v. United States*, 539 F. Supp. 2d 242, 250 (D.D.C. 2008) (substituting the United States for three individual IRS employees sued under Section 7433 and collecting cases supporting the substitution of the United States for individual employees under both Section 7433 and Section 7431).

The government argues that "[p]laintiff has failed to allege that he exhausted his administrative remedies" under Section 7433, warranting dismissal of this claim. Fed. Defs.' MTD at 17. The government's motion, however, provides no basis for reading plaintiff's complaint as raising a claim that his tax information was improperly disclosed "in connection with" trying to collect taxes from him, 26 U.S.C. § 7433, rather than claiming an improper disclosure unrelated to the collection of taxes, which would fall under the cause of action in Section 7431, *see, e.g.*, *Evans v. United States*, 478 F. Supp. 2d 68, 72 n.2 (D.D.C. 2007) (recognizing that "Section 7431 actions may . . . be brought" when the disclosures in question "are not in connection with 'collection' of taxes" (citations omitted)). In this case, plaintiff's allegations suggest that the alleged disclosure by IRS Agent Thomas was made in the course of the criminal investigation of the PPP loan obtained by plaintiff. *See* Am. Compl. at 31, 35. Investigating possible criminal

activity could fall under Section 7431 rather than a collection action necessarily falling under Section 7433. *See, e.g.*, *Evans*, 478 F. Supp. 2d at 72 n.2 (discussing examples of disclosures falling under Section 7431, including multiple involving criminal investigations); *Barrett v. United States*, 51 F.3d 475, 476–78 (5th Cir. 1995) (analyzing disclosures made during the course of a criminal investigation under Section 7431). In other words, Section 7433 is irrelevant here, as is plaintiff's failure to exhaust as required by that statutory section.

To properly plead a violation of Section 7431, a "plaintiff must specifically allege who made the alleged disclosures, to whom they were made, the nature of the disclosures, the circumstances surrounding them, and the dates on which they were made." *Bancroft Glob. Dev. v. United States*, 330 F. Supp. 3d 82, 101 (D.D.C. 2018) (quoting *May v. United States*, No. 91-0650-CV-W-9, 1992 U.S. Dist. LEXIS 16055, at *6 (W.D. Mo. Apr. 17, 1992)). This information is needed "to put the [g]overnment on notice of which exact actions a plaintiff challenges." *Id.* Here, plaintiff has met this standard. First, plaintiff alleges that "IRS SA Jeffrey D. Thomas" is the IRS employee who disclosed his confidential tax information. Am. Compl. at 35. He alleges that the disclosure was made to his mother, and that the disclosure consisted of Agent Thomas telling her about plaintiff's receipt of a $312,500 loan, which information was included in plaintiff's 2020 tax returns, *id.*, as well as "how much money [plaintiff's] company made," *id.* at 21. He says the disclosure took place in "April of 2023," *id.* at 21, 35, and that the disclosures were made when Agent Thomas "attempted to speak with" plaintiff's mother after Agent Thomas was denied access to the residence of one of plaintiff's employees in Olathe, Kansas, *id.* at 31. These allegations provide sufficient information to allow the government to rebut the claims based on the particular alleged conversation and disclosure. *See, e.g.*, *Bancroft Glob. Dev.*, 330 F. Supp. 3d at 101–02 (holding that, "[w]hile more detail would always be helpful, the [g]overnment"

would not need more information to defend against the claims "when so many other details have also been pleaded" and discussing examples of cases). Of course, the government may still argue that the alleged disclosures fell under an exception to Section 6103 or were otherwise proper, but those arguments were not raised at this stage, and plaintiff has provided sufficient allegations to survive the motion to dismiss stage.

Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district . . . where it might have been brought" if such a transfer is "in the interest of justice" and "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a). This authority may also be invoked *sua sponte* where appropriate. *See In re Scott*, 709 F.2d 717, 721 (D.C. Cir. 1983); *Miller v. Toyota Motor Corp.*, 620 F. Supp. 2d 109, 117 (D.D.C. 2009) (transferring a case to another district *sua sponte*); *Jenkins v. United States*, Civil Action No. 22-3757 (CKK), 2023 WL 130740, at *2 (D.D.C. Jan. 9, 2023). Under 28 U.S.C. § 1406, a court may transfer a case filed in a district without proper venue to a district where venue is proper "if it be in the interest of justice." 28 U.S.C. § 1406(a). Here, plaintiff alleges no facts to suggest that venue is proper in the District of Columbia. Instead, the actions and disclosures in question happened at plaintiff's mother's house in "Grandview, Missouri," Am. Compl. at 31, making venue proper in the Western District of Missouri. Furthermore, both plaintiff and the federal defendants have consented to transfer of any claims not dismissed to the Western District of Missouri. *See* Fed. Defs.' MTD at 18; Pl.'s Opp'n at 2–3. Transferring this claim along with plaintiff's *Bivens* action, *see supra*, Part II.A.4, is also more convenient for both parties and will conserve judicial and parties' resources, by avoiding bifurcating plaintiff's case and forcing the parties to litigate two cases in two different courts, and for any potential witnesses, who are likely to be located in the Western District of Missouri, where the alleged disclosures took place.

For all these reasons, the United States will be substituted as the proper defendant for plaintiff's claim of unlawful disclosure of his confidential tax information, and the claim will be transferred to the Western District of Missouri.

### B.    Claims Against U.S. Bank

Plaintiff alleges four separate claims against U.S. Bank: (1) breach of contract, Am. Compl. at 28; (2) negligence, *id.*; *see also* U.S. Bank's Mem. Supp. Mot. to Dismiss Am. Compl. ("U.S. Bank's Mem. Supp. MTD") at 3 n.4, ECF No. 45-1 (acknowledging plaintiff's separate negligence claim); (3) unlawful discrimination, in violation of 15 U.S.C. § 1691, Am. Compl. at 29; and (4) defamation, *id.* at 30.  U.S. Bank argues that all four claims should be dismissed for failure to state a claim upon which relief could be granted, under Federal Rule of Civil Procedure 12(b)(6), and alternatively that claims one, three, and four are precluded by the result of a previous arbitration between plaintiff and U.S. Bank.  *See generally* U.S. Bank's Mem. Supp. MTD.

At the outset, U.S. Bank's argument that plaintiff's first, third, and fourth claims are precluded by the previous arbitration submitted to the Court, *see* Award of Arbitrator, ECF No. 45-2, is not persuasive.  This arbitration award resolved plaintiff's claims related to "several personal accounts" he had with U.S. Bank and "do[es] not relate to [plaintiff's] businesses or the business relationship" between plaintiff and U.S. Bank, including the PPP loan extended to plaintiff's business.  *Id.* at 1.  The claims raised by plaintiff in the instant case, however, clearly related to the PPP loan and plaintiff's business relationship with U.S. Bank.  *See, e.g.*, Am. Compl. at 28 (alleging plaintiff violated "a Duty to Defer" the PPP loan pending the SBA's forgiveness determination); *id.* at 29 (alleging the discrimination related to plaintiff's PPP loan for HOEE); *id.* at 30 (alleging the defamation involved statements to the SBA about the same PPP loan).  Although the arbitrator may have considered some statements related to the PPP loan, *see, e.g.*, Award of

Arbitrator at 1 (acknowledging that "certain evidence was admitted at the hearing related to [plaintiff's business's] PPP loan"), *id.* at 3 (describing discrimination allegations involving the PPP loan), the arbitrator's award specifically notes these business-related claims were not at issue in the arbitration and that such claims were not considered or resolved, Award of Arbitrator at 1 ("While certain evidence was admitted at the hearing related to Hustle's PPP loan, *this consumer arbitration and this award do not relate to [plaintiff]'s businesses or the business relationship between the parties*" (emphasis supplied)). In short, plaintiff's claims against U.S. Bank are not precluded by the arbitrator's decision. Nonetheless, as explained next, the claims against U.S. Bank cannot survive.

### 1. Plaintiff Does Not Allege US Bank Breached Any Specific Provision Obliging the Bank to Take Action on His Loan.

Plaintiff alleges U.S. Bank breached its contract with him by refusing to "Honor the contract and Defer the Loan or Relay that it needs to be done." Am. Compl. at 28. Plaintiff, however, has failed to allege that any provision of the contract creates this obligation, and the contract itself contains no provision requiring U.S. Bank to do so.

A breach of contract claim requires that the plaintiff allege (1) the existence of a valid contract between the parties, (2) "an obligation or duty arising out of the contract," (3) a breach of this duty, and (4) damages as a result of the breach. *U.S. Conf. of Mayors v. Great-West Life & Annuity Ins. Co.*, 327 F. Supp. 3d 125, 129 (D.D.C. 2018) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)). At the motion to dismiss stage, courts are generally prohibited from considering documents or other materials outside of the pleadings; for contract claims, however, where a party has attached the contract to its pleading or incorporated the contract by reference, the court may properly consider the contract in deciding the motion to dismiss. *CopyWatch, Inc. v. Am. Nat'l Red Cross*, 299 F. Supp. 3d 189, 196 (D.D.C. 2018) (quoting

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015)); *Patrick v. District of Columbia*, 126 F. Supp. 3d 132, 135–36 (D.D.C. 2015) (quoting *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011)); *Elec. Priv. Info. Center v. IRS*, 575 F. Supp. 3d 84, 88 (D.D.C. 2021) (quoting *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)). A document may be incorporated by reference into a complaint even where it is not attached to the complaint, if the document is "referred to in the complaint and [ ] integral to [the plaintiff's] claim." *Banneker Ventures*, 798 F.3d at 1133 (alterations in original) (quoting *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)). In the instant case, plaintiff attached a copy of the contract with U.S. Bank to his motion to amend his complaint, *see* U.S. Bank SBA Payroll Protection Loan, and this contract is referenced in the Amended Complaint, which alleges that U.S. Bank breached the contract, *see* Am. Compl. at 28. These references to the contract are sufficient for review on a motion to dismiss, particularly since the contract is unquestionably "integral" to the breach of contract claim.

Plaintiff alleges that defendant U.S. Bank breached section "1.2" of the contract. *Id.* This provision, however, does not create any obligation on behalf of U.S. Bank unilaterally to forgive plaintiff's loan or tell the SBA that plaintiff's loan should be forgiven, as plaintiff alleges. *See id.* Instead, this provision lays out how plaintiff may apply for loan forgiveness and only creates an obligation on the part of U.S. Bank to "provide the Borrower written notification of the remaining balance and re-amortization of the Loan" after forgiveness has been approved, U.S. Bank SBA Payroll Protection Loan ¶ 1.2—something plaintiff acknowledges has not yet happened, as he repeatedly alleges the application for forgiveness is still pending, *see, e.g.*, Am. Compl. at 10, 19. As U.S. Bank persuasively argues, plaintiff certainly has not identified any "specific provision of any contract" with U.S. Bank that requires the Bank to continue servicing his loan. U.S. Bank's

Mem. Supp. MTD at 5.  The amended complaint therefore fails to state a claim against U.S. Bank for breach of contract.

### 2. Plaintiff's Negligence Claim Against U.S. Bank Does Not Plead Facts Sufficient to Show a Duty Existed or Was Breached.

Plaintiff's claim of negligence against U.S. Bank similarly fails to state a claim.  To state a claim of negligence, a plaintiff "must show: (1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach." *Poola v. Howard Univ.*, 147 A.3d 267, 289 (D.C. 2016) (citation omitted).  In alleging that the defendant owed a duty to the plaintiff, the plaintiff must also show that the duty existed independent of any contractual relationship between the two parties, meaning that the duty could not arise out of a contract between them.  *Armstrong v. Navient Sols., LLC*, 292 F. Supp. 3d 464, 473 (D.D.C. 2018) (citing *Carter v. Bank of Am., N.A.*, 888 F. Supp. 2d 1, 15 (D.D.C. 2012)).

Here, plaintiff does not allege any facts to show that U.S. Bank had a duty to plaintiff independent of the contract or that any duty was breached.  Making merely conclusory allegations that U.S. Bank "owed both [plaintiff] and [his] company a duty" and that "US Bank breached that duty," is wholly insufficient, absent any facts to support those assertions.  Am. Compl. at 29. While the Court must assume that any *factual* allegations in the complaint are true, the same is not true of "a formulaic recitation of the elements of a cause of action" that is "devoid" of "further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  Plaintiff has not pled any facts that suggest a duty existed in this case independent of his contract with U.S. Bank, and even if such a duty existed, he also has not pled any facts to suggest that any duty was breached.  Accordingly, plaintiff's negligence claim against U.S. Bank must be dismissed.

### 3.    Plaintiff's Claim of Discrimination Does Not Plead Sufficient Facts to Support an Inference of Discrimination by U.S. Bank.

Plaintiff further alleges that U.S. Bank discriminated against him in violation of the Equal Credit Opportunity Act ("ECOA").  Am. Compl. at 29.  This law prohibits "discriminat[ing] against any applicant, with respect to any aspect of a credit transaction— . . . on the basis of race . . ." 15 U.S.C. § 1691(a).  U.S. Bank characterizes plaintiff's allegations as "inadequate threadbare recitals of race discrimination because they present no *facts* from which one could conclude that race was a factor in U.S. Bank's actions."  U.S. Bank's Mem. Supp. MTD at 8 (emphasis in original).  The Court agrees.  Plaintiff claims that U.S. Bank treated him, "A BLACK MAN," differently by "MAKING STATEMENTS WITHOUT VERIFYING THE ACCURACY" and "[d]en[ying]" forgiveness of his loan when it was "supposed to be [a]pproved."  Am. Compl. at 29 (capitalization in original).  Plaintiff also references a YouTube video of an investigative news report on specific instances where other black man have faced discrimination at U.S. Bank branches.  *Id.* at 27, 29.  A video discussing individual incidents of discrimination, even ones occurring at U.S. Bank branches, does not prove any discrimination occurred in this case, and plaintiff's conclusory allegations provide no facts or other basis that would support an inference that U.S. Bank took any actions in this case as a result of plaintiff's race, as is required for a claim of discrimination to pass muster under Rule 12(b)(6).  *See, e.g.*, *Presidential Bank, FSB v. 1733 27th Street SE LLC*, 271 F. Supp. 3d 163, 171–72 (D.D.C. 2017) (dismissing an ECOA claim because it "present[ed] no facts from which [the defendants] could conclude that race was a factor in [the plaintiff's] treatment of them").

Even if plaintiff's allegations that he is a black man and is being treated "DIFFERENTLY" by U.S. Bank is construed liberally to mean that the "DIFFERENT" treatment is *because* of his race, *see* Am. Compl. at 29, plaintiff never establishes that other customers who were not black

23

were treated differently in circumstances similar to those faced by plaintiff.  Importantly, the allegation of discrimination appears to rest largely on the denial of plaintiff's application for forgiveness of the PPP loan.  *See id.* ("The loan was supposed to be Approved, and Forgiven"; "The Treasury, SBA and IRS have all changed their position and US Bank still refuses, and Denys [sic] me.").  Here, however, the denial decision cannot be attributed to U.S. Bank, but is instead made by the SBA, as plaintiff ultimately recognizes, *e.g.*, *id.* at 10 ("Plaintiff was denied forgiveness in the Small Business Administration with a PPP loan he managed"), and furthermore, as plaintiff points out, his application for forgiveness is no longer denied and is still pending final decision, *e.g.*, *id.* ("THE LOAN IS CURRENTLY PENDING FORGIVENESS BY THE SBA, AND ALL PARTIES HAVE AGREED IT IS NO LONGER DENIED" (capitalization in original)).  Ultimately, plaintiff's claim contains no "circumstantial facts, history, or context," *Presidential Bank*, 271 F. Supp. 3d at 172, to support an inference that U.S. Bank discriminated against plaintiff based on his race, particularly given plaintiff's main allegations about the denial of loan forgiveness do not relate to actions taken by U.S. Bank.  This discrimination claim must therefore be dismissed.

### 4.    Plaintiff Does Not Allege U.S. Bank Made Any False Statement About Him.

Plaintiff's final claim against U.S. Bank alleges that the Bank defamed him by telling the SBA "that it believed his tax documents were fabricated due to nothing ever being filed" when "the tax documents were, in fact . . . filed."  Am. Compl. at 30.  Stating a claim for defamation requires proving four elements: (1) that the defendant "made a false and defamatory statement concerning the plaintiff," (2) that defendant "published the statement without privilege to a third party," (3) that defendant was "at least negligen[t]" in publishing the statement to the third party, and (4) "either that the statement was actionable as a matter of law irrespective of special harm or

that its publication caused the plaintiff special harm." *Gregorio v. Hoover*, 238 F. Supp. 3d 37, 55 (D.D.C. 2017) (quoting *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005)).

Here, plaintiff has failed to allege any facts showing that U.S. Bank's statement that his "tax documents were fabricated," Am. Compl. at 30, was false. Plaintiff contends that U.S. Bank's claim about his tax documents was wrong because they "were, in fact . . . filed," *id.*, but that statement, even if true, would not prove U.S. Bank made a false statement by indicating his tax documents had been fabricated. Nothing in the Amended Complaint presents evidence to suggest this statement was false or to show that plaintiff's tax documents were accurate. *See generally id.* Even if U.S. Bank had no "direct access" to plaintiff's tax documents, *id.* at 30, and even if U.S. Bank was wrong that he had not filed tax documents, plaintiff has not shown that U.S. Bank's statement itself—that plaintiff "fabricated" his documents—is false. Without alleging this element of a defamation cause of action, plaintiff cannot sustain a defamation action against U.S. Bank, and thus this claim must also be dismissed.

### C.    Claims Against Stinson LLP

The Amended Complaint raises claims against Stinson LLP for (1) breach of contract, Am. Compl. at 28 (alleging that "US Bank and their counsel Stinson LLP both refused to Honor the contract and Defer the Loan or Relay that it needs to be done"), and (2) negligent misrepresentation, *id.* at 43.[8]  Stinson LLP moves to dismiss each claim for failure to state a claim. *See generally* Stinson LLP's MTD.

---

[8]    Stinson reads the amended complaint as also asserting negligence against Stinson, *see* Stinson LLP's MTD at 1; Stinson LLP's Mem. Supp. Stinson LLP's Mot. to Dismiss Am. Compl. ("Stinson LLP's Mem. Supp. MTD") at 5, ECF No. 46–1, and contends this claim should also be dismissed for failure to state a claim, *see generally id.* This reading is understandable, given that the breach of contract claim against Stinson and the breach of contract and negligence claims against defendant U.S. Bank are raised in the same section of the Amended Complaint. Am. Compl. at 28–29. The best reading of plaintiff's complaint, however, does not include Stinson in plaintiff's claim for negligence. While Stinson is mentioned in relation to breach of contract, *id.* at 28 (alleging that "US Bank and their counsel Stinson LLP both refused to Honor the contract and Defer the Loan or Relay that it needs to be done"), the firm is not mentioned in relation to negligence, *id.* at 29 (alleging only that "US Bank owed . . . a duty" and

### 1.    Plaintiff Does Not Allege a Contract Existed with Stinson LLP.

Plaintiff's breach of contract claim against Stinson LLP fails to state a claim because he does not allege the existence of a contract between himself and Stinson, instead arguing that Stinson, as U.S. Bank's counsel, "refused to Honor the contract" between himself and U.S. Bank. Am. Compl. at 28.  A breach of contract claim, however, requires, among other elements, "a valid contract *between the parties*," *U.S. Conf. of Mayors*, 327 F. Supp. 3d at 129 (emphasis supplied) (quoting *Tsintolas Realty Co.*, 984 A.2d at 187), and plaintiff has not pled any facts to establish this requirement, meaning this claim must be dismissed.

### 2.    Plaintiff Does Not Sufficiently Plead Negligent Misrepresentation.

Plaintiff's final claim against Stinson LLP alleges negligent misrepresentation against the firm for "provid[ing] the plaintiff with false and incorrect information," Am. Compl. at 43, and that a lawyer from "Stinson refus[ed] to relay information to her client needed for the SBA," *id.* at 44.  To raise a claim of negligent misrepresentation, a plaintiff must show that (1) the defendant "made a false statement or omitted a fact that he had a duty to disclose," (2) the false statement or omitted fact "involved a material issue," and (3) "that the plaintiff reasonably relied upon the false statement or omission to his detriment."  *Heyer v. Schwartz & Assocs. PLLC*, 319 F. Supp. 3d 299, 306–07 (D.D.C. 2018) (quoting *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015)). In addition, claims of negligent misrepresentation are held to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), *see, e.g.*, *Intelect Corp. v. Cellco P'ship GP*, 160 F. Supp. 3d 157, 188 n.19 (D.D.C. 2016) (collecting cases holding this requirement applies to negligent misrepresentation), which requires that plaintiffs claiming negligent misrepresentation "state the

---

"breached that duty").  Were the amended complaint read to include a negligence claim against Stinson, the claim would also be dismissed for failure to state a claim, given that Stinson is not mentioned in the portion of the complaint alleging negligence and none of the elements of a negligence claim have been pled against the firm.

time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the" misrepresentation.  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (quoting *United States v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)).

Here, plaintiff has failed to allege facts establishing any of the elements of negligent misrepresentation.  As Stinson correctly asserts, the Amended Complaint does not allege "any specific facts establishing that Stinson failed to disclose any facts it had a duty to disclose to [p]laintiff, U.S. Bank, or anyone else."  Stinson's Mem. Supp. Stinson LLP's Mot. to Dismiss Am. Compl. ("Stinson LLP's Mem. Supp. MTD") at 6, ECF No. 46–1.  Nor does the Amended Complaint allege that such an omission or false statement was material, or that plaintiff relied on it and suffered a detriment as a result.  *See generally* Am. Compl.

The Amended Complaint seems to suggest that a lawyer at Stinson made a false statement when telling plaintiff to "contact the SBA" himself and made an omission when the lawyer "refus[ed] to relay information to" U.S. Bank that was needed for the SBA.  *Id.* at 44.  Plaintiff fails to allege, however, why Stinson had a duty to disclose any omitted information, how these statements and omissions were material, or how plaintiff relied on them and suffered a detriment as a result.  These fatal flaws mean that this claim also fails to state a claim and must therefore be dismissed.

## III.    CONCLUSION

For the foregoing reasons, taking the alleged facts in plaintiff's Amended Complaint as true, plaintiff's *Bivens* action against the two John Doe federal employees and claim against the United States for unlawful disclosure of his confidential tax information will be transferred to the

Western District of Missouri, while his remaining claims must be dismissed, pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6).

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: December 10, 2024

_____
**BERYL A. HOWELL**
United States District Judge